HENRY D. HOLLAND, SHERIFF, APPELLANT, vs. STATE EX REL. DUVAL COUNTY, APPELLEE.

1. A statute authorizing the County Commissioners to employ at hard labor upon public works all persons imprisoned in the jails of the several counties, under sentence upon conviction of crime, or imprisoned for failure to pay fine and costs, is not rendered unconstitutional or made the exercise of a judicial function by the fact that it does not contemplate that its terms shall be pronounced as a part of or incorporated in the record of the sentence of the court, or by the fact that they are not so pronounced or incorporated.

2. Such a statute is, as against such objections, purely legislative in its character, and violates no provision of the constitution.

3. Sections 1 and 2, page 320, McClellan's Digest, held to repeal section 3, same page.

4. Where the sentence is one of imprisonment and costs, the credit of thirty cents per day under said act (sections 1 and 2) is applicable to costs alone, and no credit that may be given the convict on his costs will operate to limit the power of the County Commissioners to employ him during the period of his sentence.

5. The expense of subsisting a convict after he has been sentenced to such imprisonment is not a part of the "costs." Such costs are those legally adjudged against him by the sentence.

6. Where a statute imposes a power or duty upon a board of officers, and to execute such power or perform such duty it becomes necessary to obtain a writ of mandamus, they may apply for the same.

7. The County Commissioners, and not the Attorney General, held to be the proper applicants for a mandamus against a Sheriff obstructing the enforcement of the above statute, and that such an application, though made in the name of the county, and not objected to, is sufficient, even assuming it should have been made in their names and official titles as County Commissioners.

8. An allegation in an alternative writ of mandamus, of a demand for certain prisoners "confined in the jail" of the county, "under sentence to imprisonment," and giving their names, and the dates on and periods for which they were sentenced, is a sufficient allegation that they are, at the time of the application for the writ, so confined.

9. A resolution of a Board of County Commissioners authorizing two of its members to take such action as in their judgment is necessary to utilize the labor of county prisoners on public works is not an illegal delegation by the board of its powers under the above statute. It shows a determination by the board that the statute shall be enforced, leaving the details of its enforcement to two members, whose action is not put beyond the supervision or control of the board as such.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*A. W. Cockrell & Son* for Appellant.

1. If the theory upon which the duty of the Sheriff to deliver, and the right of the relator to demand, the possession of these persons are predicated be sound, the alternative writ could be sued out *only* at the instance of the Attorney General. The relator, the county of Duval, was interested therein in no *other* sense, and to no *greater* extent than any other county in the State was interested.

The Judges of this court, in response to questions pro-

JANUARY TERM, 1887. 125

H. D. Holland v. State ex rel., Duval Co.—Argument of Counsel.

pounded by the Executive, have laid down the tests by which to determine, under the Constitution, the functions county officers and counties, in their inter-State relation, are required to perform. 13 Fla., 687-699, inclusive.

If the statutes, hereinafter assailed on other grounds, as unconstitutional, upon which the right of the County Commissioners to take into their possession and subject to labor on the streets and roads, &c., " persons imprisoned in the jails of the several counties of the State, under sentence, upon conviction for crime, or for failure to pay a fine and costs imposed upon conviction for crime," (McClellan's Dig., p. 320, sec. 1, *et seq.*,) can be harmonized with the constitutional provision which appropriates to the common school fund, as one of the *sources* thereof, " all fines collected under the penal laws of this State," (art. 8, sec. 4,) and declares in art. 8, sec. 6, " that the principal of the common school fund shall remain inviolate forever," they can be so reconciled *only* upon the presumption that the County Commissioners will turn over the funds realized from the employment, thirty cents per day for each convict, to the common school fund.

The Board of Commissioners then become, under the statutes in question, a State agency, whereby certain convicts imprisoned in the county jails are worked for the benefit of a school fund, a State fund, appropriated to the whole people of the State, and disbursed through and by officers of the State, with the appropriation and management and disbursement of which the counties as such have nothing to do. For these reasons, if mandamus lies to compel the delivery of the persons designated in the writ, it lies *only* at the instance of the Attorney-General of the State.

2. The alternative writ does not set up facts upon which as matter of law the right of L'Engle and Robinson to demand, and the correlative duty of the Sheriff to surrender

these persons are or can be sustained. The rule applied to pleadings in mandamus cases is rigorous, requiring " the alternative mandamus must show clear right to the relief demanded by the relator, and must set forth all the material facts upon which he relies, so that the same may be admitted or traversed; and failing to do this the writ is fatally defective." 55 Amer. Dec., pp. 791, 799 and 806, and cases cited.

It does not appear from said writ that the judgment, or sentence, under which these persons were imprisoned, condemned them, or either of them, to labor. It is not enough that one be duly convicted of crime; although conviction under our Constitution is an indespensable basis upon which to proceed to legal punishment; there can be no legal punishment without it. But we insist, and before this case was discussed we never heard the proposition questioned, that the punishment to be inflicted must be expressed in the judgment—the sentence of the law *as recorded.* In 3 Peters, 202, Ex Parte Tobias Watkins, Chief-Justice Marshall declares "a judgment, in its nature, *concludes* the subject on which it is rendered, and pronounces *the law* of the case." And in Ex Parte Lang, 18 Wall., 163, 204, the prevailing and dissenting opinions concur in this proposition. In Bradley vs. The State, 69 Ala., 320, 321, Brickell, C. J., for that court, expatiates upon the " certainty, fixedness and finality " necessary to a judgment or sentence, and thus expresses the view which we are herein seeking to enforce. " The judgment rendered, or sentence passed, by a court, though pronounced by a Judge, is the judgment or sentence of the law." " It is the certain and fixed conclusion of the law, following upon ascertained premises." " When the one is rendered and the other passed, it is not open to reconsideration. The power of the court is exhausted, and *there can be* no alteration or modification of

the judgment or the sentence of the law, *as it stands recorded*."

Now, it is not alleged or claimed that the " sentence of the law *as recorded*," on the judgment of conviction of these persons, expressed or contemplated that these persons should do labor, at thirty cents a day, on the streets or roads, or elsewhere, for a fixed certain or other duration of time, at the election of the Board of County Commissioners, *or otherwise ;* but the contention of the counsel, who sued out the writ, is that the statute, (McClellan's Dig., 320, sec. 1, *et seq.*,) silently and by its inherent force, insinuated the penalties therein prescribed, into the sentence of the law as it was recorded, and these penalties by legal construction and intendment thus become a part of the sentence, in the case of each of these persons.

To this contention of the relators there are two answers :

1. There is nothing in the language used by the Legislature, in enacting this statute, to indicate the legislative mind to endow it with such extraordinary self-asserting, inherent, insinuating power.

2. It is beyond the constitutional competency of the Legislature to annex to a crime of which one has been duly convicted another or different punishment than that pronounced by the Judge to be the sentence of the law, *as it stands recorded* in the particular case. It is a function wholly judicial to pronounce judgment, " the certain and final conclusion of the law; following upon ascertained premises." "And however erroneous it may be, "the sentence passed by the court, though pronounced by the Judge, is the judgment, *or the sentence of the law*, in the particular case ;" that is, the *whole* judgment, the *whole* sentence of the law, until reversed or set aside.

If the Legislature may apply a punishment upon conviction for crime, by the sub-silentio operation of a penal stat-

ute, acting by virtue of its inherent force, and not through its judicially ascertained applicability upon judicially ascertained premises in the particular case, it can dispense with a judicial sentence altogether; and, the nature of the crime and the degree of the guilt being determined by the verdict of the jury, and the judgment of conviction rendered thereon, leave to the Sheriff or this other executive agency of modern legislative contrivance—the Board of County Commissioners—the function of pronouncing " the certain and final conclusion of the law following upon premises, so judicially ascertained."

But so cautious is the law that only *its* sentence, *as* pronounced by the Judge, and *as recorded*, shall be executed, that it declares in cases merely civil, if the sentence or decree ascertaining the rights and liabilities of parties " is incapable of safe execution *according to the letter of its mandate*," it is not valid. Says Judge Brickell, in the case cited, " The sentence of a court in a criminal case operating to deprive a citizen of liberty ought not to be less certain, less consistent in its terms, than the judgment or decree which affects only rights of property."

Take for illustration the case of Robinson designated in the writ as sentenced May 28th for three months imprisonment. It is stated that demand was made for this person August 2d, 1886. It thus appears inferentially that Robinson had suffered the whole penalty of his sentence if he remained in jail to the 28th day of August, 1886. At the time demand was made, only twenty-six days were wanting to complete the full term of his imprisonment. Suppose the Sheriff had surrendered him August 2d, 1886, how long must he have labored to satisfy the demands of his sentence? A sentence whose validity, as we have seen, depends upon its being so certain and fixed as to be capable of safe execution. How long? Can the counsel for

appellee, upon their theory that the statute, (McClellan's Digest, 320, secs. 1 and 2,) became and was a part of that sentence, inform this court how long Robinson, had he been surrendered August 2d, 1886, was subject to labor? The statute, sec., 2, provides, " all convicts employed under the provisions of the foregoing section shall not be required to labor more than ten hours per day, and shall receive a credit at the rate of thirty cents per day, with subsistence for such labor, which shall be credited on the amount of fine and costs charged against them."

As it is not alleged in the alternative writ, or claimed in the argument, there was any " fine and costs" adjudged against Robinson, in the sentence of the law pronounced by court against him, and as he has suffered the entire penalty, imprisonment, wanting twenty-six days, to which he was sentenced, the thirty cents per day to which he is entitled to credit must be credited to the " *costs charged*," not adjudicated, because there was none adjudicated against him. These charges have arisen since, and indeed by virtue of his imprisonment—that is, the costs of maintaining him, say forty cents per day. Sixty-four days at forty cents per day would make the aggregate costs charged against him August 2d, 1886, when demanded and surrendered, $25.60. The work of Robinson, eighty-five and one-third days, at thirty cents per day, would pay the costs charged to him, say $25.60 ; that is to say, if the Board of Commissioners continuously supplied work for him. Sundays, however, intervene, not to speak of rainy days, forbidding work upon streets and roads and bridges. If he should not be so continuously employed, as the Board are only authorized to keep him " while so employed," he goes back to the jail, when he must submit during this interval of non-employment to a charge of forty cents per day for keeping him.

10

130 SUPREME COURT.

H. D. Holland v. State ex rel., Duval Co.—Argument of Counsel.

Thus, saying nothing as to his fixed term of imprisonment, as pronounced in the sentence which was in terms certain and final, we are bound to concur in the reasoning and conclusion of Judge Brickell, before cited, in view of the uncertainty sought to be impressed on this sentence by construction and intendment of law: "When a sentence itself is so vague and indefinite that it may operate as a pretense of authority for prolonging the term of servitude beyond that to which the law gives sanction, to say the least it is irregular, invalid, and a court having jurisdiction is bound to reverse it."

The only escape from the uncertainty as to the nature and duration of punishment which would follow the incorporation of the statute in the sentence of the court, as part of it, is to hold that the statute, in respect of the provision for giving credit, applies only to such convicts as are adjudged to pay a fine and costs.

But we insist *such* a construction boldly departs from the *terms* of the statute. Its language is, "all convicts employed under the provision of the foregoing section shall. receive," &c. *Only* those who receive thirty cents a day are protected from enforced labor for longer time than ten hours per day. It is as clear as language can make it that *those* and *only* those who are to receive credit, on fine and cost account, are to be worked under the employment of the County Commissioners; and *those*, and only *those, so* employed and *so* credited on fine and cost account, whose work is confined to ten hours per day.

If the spirit or purpose controlling the Legislature in the enactment of the statute requires an interpretation different from its obvious meaning, we submit a judicial decision alone can fix the meaning and application to ascertained premises in a given case; and this is the precise function

of a Judge, pronouncing *as a court*, the sentence of the law, following the conviction of an offender in a given case.

It thus appears, if the statute is susceptible of the construction put upon it by the counsel for the appellees, it is void, as under the Constitution of Florida, "no person properly belonging to one of the departments shall exercise any functions appertaining to either of the others." If the statute of its inherent vigor is made to become a part of the sentence of the court, then the Legislature usurped judicial functions in so passing and so applying it; if the Legislature designed to leave it to the Board of County Commissioners to fix the meaning of the statute so incorporated as a part of the sentence of the law, and thus determine the nature and duration of the punishment, thus incorporated by statute as part of the sentence of the law, the statute is void, for it of necessity delegates the function of a court to the Board of County Commissioners.

3. The point is further presented, as matter of demurrer to the mandamus, the allegations of which, failing to aver that a "fine and costs" was adjudged against the persons named in the writ, do not make a case, within the terms of the statute relied on as conferring authority on the board to demand them from the custody of the Sheriff.

4. The argument, so far, proceeds upon the concession that the statutes in question require the County Commissioners to pay over the funds, thirty cents per day, fines "collected under the penal laws of this State," to "the common school fund." It is clear from the whole series of acts, (McClellan's Dig., p. 320, sec. 1–6, inclusive,) no *such* requisition was made, or was *intended* to be made. Indeed section 4 directs that the proceeds arising from such labor shall be covered into the county treasury. Hence the whole chapter, 47, is palpably in conflict with the Constitution which

declares the sources of the school fund shall remain inviolate forever.

5. As matter of pleading the alternative writ is fatally defective. Analyzing this writ, it is clear the only *traversible* allegations therein are: (1) The adoption of a resolution by the board authorizing two of its members to utilize convict labor; (2) A demand upon the Sheriff for certain persons designated, " *designatio personæ*," as persons under sentence of imprisonment confined in the jail, and (3) that the Sheriff declined to deliver. There are no other traversible allegations. Arberry vs. Beavens, 6 Texas, 457. Nor can delegated power be delegated. The *entire* board only could act. 56 N. Y., 79.

*Hartridge & Young* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

The alternative writ alleges that at a regular meeting held January 4th, 1886, the Board of County Commissioners of Duval county adopted a resolution authorizing the chairman of the board and Commissioner L'Engle to take such action as in their judgment might be necessary to utilize the labor of county prisoners on public works; that in pursuance of said resolution and under the authority thereof H. Robinson, the chairman, and Commissioner L'Engle, demanded of the appellant, Sheriff of the county, on the second day of August, 1886, that he deliver to Titus Tilman, foreman of the guards of county convict gang, the following named prisoners, confined in the jail of the county under sentence to imprisonment therein, or imprisoned therein for failure to pay a fine imposed upon conviction for crime, to-wit: Reuben Hamilton, sentenced June 12th, for six months; William Robinson, sentenced May 28th, for three months; H. J. Hagarty, sentenced

June 12th, for four months, and James Todd, sentenced May 18th, for three months; and that said Sheriff has refused to comply with the demand; and the writ commands him to deliver the prisoners to Tilman, foreman of the guards of the county convict gang, or show cause.

The Sheriff demurred to the writ on several distinct grounds, and, after argument, the demurrer was overruled and there was final judgment awarding the peremptory writ. The Sheriff appealed and an order staying the issue of the writ pending such appeal was made.

Chapter 2090, approved March 7th, 1877, p. 320, Mc-Clellan's Digest, provides that the Board of County Commissioners of the several counties of this State may employ all persons imprisoned in the jails of the several counties in this State under sentence of conviction for crime or for failure to pay a fine and costs imposed upon conviction for crime, at labor upon the streets of incorporated cities or towns, upon the roads, bridges and public works in the several counties where they are so imprisoned, and to make all needful rules and regulations for their safe-keeping, government and discipline while so employed. The convicts so employed are not to be required to labor more than ten hours per day, and are entitled to a credit at the rate of thirty cents per day with subsistence for such labor, which shall be credited on the amount of fine and costs charged against them. Section 31 of the act to regulate criminal proceedings before Justices of the Peace (chapter 2093), approved at the same session, but five days before the above statute, provided that every male person convicted of any offence in a Justice Court and sentenced to imprisonment in the county jail, or imprisoned for the non-payment of a fine or costs under the provisions of the act of which it is a part, may be employed at such manual labor as may be directed by the County Commissioners

of the county, in or upon any buildings, grounds, streets, roads, bridges or public works of any kind within their county, and under such regulations as they may prescribe, but not to exceed ten hours' labor in each twenty-four hours, and any person imprisoned for the non-payment of any fine or costs, shall be credited on account thereof with the sum of fifty cents for each day's labor so performed in addition to the charge for subsistence.

We think the statute first set out (chapter 2090) which, as stated, was enacted subsequently to the other (chapter 2093) was intended as a revision and operates as a repeal of the other. This point was not passed on in Ex Parte Hunter, 16 Fla., 575. It, (chapter 2090), covers the case, not only of the male convicts from Justice of the Peace Courts, but of convicts of both sexes from any court, and not only supplies the place of section 31 of chapter 2093, but makes other provisions to effect the general purpose of the employment of convicts confined in the county jail under sentence of imprisonment, or on default in payment of fines and costs. Under section 14 of chapter 2093 a prisoner committed to prison because of his failure to pay "fine and costs," adjudged against him by a Justice of the Peace Court, cannot be kept in prison longer than three months.

It is perfectly clear that it never was the intention of the law-makers that the provisions of section 31 of chapter 2093, or those of chapter 2090, which replace the former, should be announced in court as a part of the judgment or sentence, or be set out in the record entry of the judgment or sentence as a part thereof. Section 38, p. 451, McC.'s Digest, provides that in all cases in which persons may be convicted of any offence and sentenced to *imprisonment in a county jail*, the court may also sentence such persons to be employed at hard labor, and in such case the prisoner

may be employed at such manual labor as may be directed
by the County Commissioners of the county in or upon any
public buildings, yards, streets, alleys, bridges, or public
work of any kind within their county, and under such
regulations as they may prescribe, but not to exceed ten
hours labor in each twenty-four hours. This section was
enacted in 1868 as a part of the general crimes act. Its
purpose was to authorize the court in its wise discretion to
add to a sentence of imprisonment in the county jail the
additional punishment of manual labor, if the circumstan-
ces of the commission of the crime seemed to call for such
additional punishment, but it provides for no allowance to
the convict of any credit on the costs adjudged against him.
Though he had labored each day of the period of *his sen-
tence,* he would, under this section, still be detained in the
jail for the non-payment of the costs adjudged against him.
We are not now inclined to think that chapter 2093 ap-
plies, at least during the period of the sentence, to a con-
vict sentenced under the above section of the act of 1868.
The purpose of chapter 2090 (which alone we need now
mention) was that whenever a sentence to *imprisonment in
the county jail,* upon conviction of crime, should be rendered,
or wherever a sentence of *fine and costs* should be rendered,
and the convict in the latter case should be committed to,
and held in the county jail on account of his failure to pay
such fine and costs, the sentence in the former case and the
sentence and default and consequent commitment and im-
prisonment in the latter case, should in law subject the con-
vict to be employed or put at work by the County Com-
missioners as provided by the statute. Whenever any ex-
press sentence of imprisonment in the county jail, or any
sentence of fine and costs, for the non-payment of which
he will be confined in the county jail, is rendered, the con-
vict becomes as much subject to the enforcement of the

provisions of the act in question as if such provisions were set out in the sentence; the judgment of the law is, as a result and legal consequence of the judgment or sentence of imprisonment, that he is liable to the provisions stated, if the County Commissioners see fit to so employ him, and as a legal consequence of the sentence of fine and costs, that he will, if he does not pay them, be liable to the enforcement of such provisions upon being put in the county jail to keep him until he does pay them.

It is contended that as the statute does not provide for an express sentence by the court to such labor, it is unconstitutional and void; that it is beyond the power of the Legislature to annex to a crime of which one has been duly convicted, another or different punishment from that pronounced by the Judge to be the sentence of the law as it stands recorded in the particular case; that it is a function wholly judicial to pronounce judgment. No one will deny that it is a judicial function to pronounce judgment upon a person charged with crime, or that a sentence passed by a court is, though pronounced by the Judge, the judgment or sentence of the law. After the passage of this act the pronouncing of a sentence of imprisonment in the county jail, or of fine and imprisonment, was the performance of a judicial function, and such sentence was the judgment of the law with all the effect which the laws of the State as they stood gave to it, and this statute was a part of these laws, and the rendition of the judgment, by its legal effect, made the provisions of the statute operative according to its terms upon the prisoners as a legal result of the judgment. Both the Judge and the prisoner understood, in the eyes of the law, the sentence as having such effect. That the Legislature can provide that persons who may be so convicted of crime shall be sentenced and made to labor is not denied; and we know of no reason why the Legisla-

ture cannot provide that a legal sentence shall have, as to offences committed subsequently to its enactment, a certain legal effect, although the effect is not declared in the body of the sentence. To so provide is not the exercise of a judicial function, but is purely a legislative act. There is nothing in the case of Bradley vs. State, 69 Ala., 318, to sustain the appellant's position. In it the sentence complained of was that the prisoner perform hard labor " for such period, not to exceed *eight months*, as will be sufficient to pay said costs, at the rate of forty cents per day," and then recited the amount of the costs and fees, and concluded, "it is ordered that said defendant perform hard labor for the county for *three hundred and eleven days*, at forty cents per day, to pay costs." This was a sentence imposed by the court. The point made against this *sentence* was the inconsistency upon its face growing out of the two periods of imprisonment italicised. The latter period exceeds the statutory period, but of it the opinion says: " This clause of the sentence may be void, an excess of jurisdiction, yet it renders the sentence inconsistent and uncertain. The inconsistency and uncertainty may be made a pretence for keeping the appellant in servitude a longer period than that to which the law subjects him," and for this reason it was held "irregular and erroneous." The point of the validity of a statute like that before us is not involved or discussed in the opinion nor in any case cited by counsel.

II. Where the sentence is one of imprisonment and costs, the credit of thirty cents per day is applicable to costs alone, and no credit that may be given the convict on his costs will operate to limit the power of the County Commissioners to employ him during the period of his sentence. If we can assume a conviction without costs then the convict can still be employed during the period for which he was sentenced. The expense of subsisting a person after he is

sentenced to imprisonment is not a part of the costs. The "costs" for which he may be put at labor are in any case those "imposed upon conviction," those legally adjudged against him by the sentence, and none others; those for which he is held under the warrant of conviction.

III. It is claimed that the alternative writ should have issued only on the application of the Attorney-General; that the county of Duval was interested in no other way than any other county in the State. It is evident that the convicts may be employed on county buildings, county roads, county bridges, county yards, or other public works in which the county of Duval is much more interested than any other county, and of which she is the sole owner or only party interested, even admitting that they may be employed on public works in the county belonging to the State, and in which consequently the people of all the counties have a common interest as constituting the body politic. For this reason the position of the appellant is not tenable, but besides this the duty or power of enforcing the statute devolved expressly upon the Board of County Commissioners of the county in whose jail the convicts are imprisoned, and they are properly the parties who should apply for the alternative writ.

The application has been made by them in fact, and such being the case, though they have used the name of the county, which of itself is evidence that the application was made by their authority, we think the proceeding sufficient even though it be true, as it may be, that an application in a case of *this kind*, and for a writ which runs in the name of the State, is not a suit within sections 21, 22 or 23, McC.'s Digest, p. 319. No objection is made however upon this ground, even if it be tenable.

IV. The alternative writ is sufficient in its material averments, showing the resolution or action of the Board

of County Commissioners deciding to enforce the statute,. also that the prisoners or convicts, naming them, are confined in the county jail under sentence of imprisonment, and giving the dates and terms of sentence. That the execution of the resolution was left to a committee is not objectionable.

It is apparent that the Commissioners had determined to enforce the statute and had not left or delegated the decision of this point to any other authority. The details of carrying out this determination were properly assigned to a committee, whose action is of course not beyond the supervision or control of the board.

The writ also shows that a demand was made on the Sheriff and he refused to comply with it.

None of the questions which are discussed in appellant's brief, as arising in case of an imprisonment of a convict sentenced to pay a fine and costs are involved, as it does not appear that either of the convicts mentioned have been so sentenced.

Judgment is affirmed.